**Edward STANTON, Appellant,**

v.

**MISSOURI DIVISION OF EMPLOY-
MENT SECURITY, and Labor and In-
dustrial Relations Commission of Mis-
souri, and Western Missouri Mental
Health Center, Respondents.**

**No. WD 42946.**

Missouri Court of Appeals,
Western District.

Nov. 20, 1990.

Samuel I. McHenry, Kansas City, for ap-
pellant.

Sandy Bowers, Jefferson City, for Mo.
Div. of Employment Security.

Ronald F. Harris, Jefferson City, for La-
bor and Industrial Relations Comm.

William L. Webster, Atty. Gen., Lee B.
Vardell, Asst. Atty. Gen., Jefferson City,
for Western Mo. Mental Health Center.

Before GAITAN, P.J., and TURNAGE
and KENNEDY, JJ.

GAITAN, Presiding Judge.

This appeal involves a petition for judi-
cial review of a decision of the Labor and
Industrial Relations Commission (Commis-
sion) which reversed the deputy's determi-
nation. The primary issue is whether the
claimant's separation from employment
was the result of misconduct connected
with work. We affirm.

The decision of the appeals tribunal, and
adopted by the commission, was based on
the following findings of fact which are
undisputed:

The claimant worked for the employer
for approximately two years and eight
months as a Custodial Worker I at a final
rate of pay of $901 per month. The
claimant was discharged from his em-
ployment for excessive absenteeism.
The claimant had received a disciplinary
suspension for absenteeism on Septem-
ber 21, 1987. During the period October
16, 1987 through January 12, 1988, the
claimant was absent from work on Octo-
ber 16, 1987, November 3, 1987, Novem-
ber 9 through 17, 1987, December 14,
1987, December 15, 1987, December 17,
1987, and December 29, 1987. The claim-
ant was absent from work on October 16,
1987, November 3, 1987, December 14,
1987, December 15, 1987, December 17,
1987 and December 29, 1987, due to ill-
ness. The claimant was absent from
work from November 9 through 17, 1987,
because he was incarcerated in the mu-
nicipal corrections facility for a convic-
tion of driving without a license. He
was also fined $100. The claimant testi-
fied that with the exception of the time
he was incarcerated he contacted the em-
ployer by telephone each day to notify
his supervisor that he would be absent
from work.

Based on the foregoing findings of fact, the appeals tribunal arrived at conclusions of law set out in relevant part hereinbelow:

... It is found that for the period November 9, 1987 through November 17, 1987, the claimant was absent from work because he was incarcerated in the municipal corrections facility. It is noted that the claimant was incarcerated because he had been convicted of driving without a license. The appeals tribunal finds that the claimant's unavailability for work due to his being incarcerated for a conviction of the traffic laws did constitute misconduct under the law. Accordingly, it is found that the claimant was discharged from his employment on January 12, 1988, for misconduct connected with his work. A disqualification of six weeks is appropriate in this matter.

The commission issued its unanimous decision affirming the decision of the appeals tribunal. Thereafter, a petition for judicial review was filed in the circuit court. The circuit court issued its order affirming the decision of the commission. This appeal followed.

Judicial review of decisions of the commission in employment security matters is governed by Mo.Rev.Stat. § 288.210 (1986), which provides in relevant part:

... In any judicial proceeding under this section, the findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law. Such actions and the questions so certified shall be heard in a summary manner and after the hearing the court shall enter an order either affirming the decision of the commission or remanding the cause to the commission for further proceedings not inconsistent with the declarations of law made by the court ...

It is the function of the reviewing court to decide whether upon the whole record the commission could have reasonably made its findings and reached its result. *Union–May–Stern Co. v. Industrial*

*Comm'n of Missouri,* 273 S.W.2d 766, 768 (Mo.App.1954). It has also been held that in determining the sufficiency of the evidence, such evidence must be considered in the light most favorable to the findings, together with all reasonable inferences which may be drawn therefrom that seem to support it. *LaPlante v. Industrial Comm'n of Missouri,* 367 S.W.2d 24, 27 (Mo.App.1963).

When the evidence of each party and inferences to be drawn therefrom conflicts, resolution of the conflicting inferences is the job of the commission, and its resolution is binding on the reviewing court. *IXL Mfg. Co. v. Labor & Industrial Relations Comm'n of Missouri,* 679 S.W.2d 903, 905 (Mo.App.1984).

When the triers of fact have reached one of two possible conclusions from the evidence, the court may not substitute its contrary conclusion even if it can be said such conclusion might have been reasonably reached. *Union–May–Stern Co.,* 273 S.W.2d at 768.

The facts of this case essentially are not in dispute. The issue in dispute is whether or not the appellant's actions constituted misconduct connected with work. Involved in this appeal is the interpretation and application of the provisions of Mo.Rev.Stat. § 288.050.2 (1986), which provides in relevant part:

Notwithstanding the other provisions of this law, if a deputy finds that a claimant has been suspended or discharged for misconduct connected with his work, such claimant, depending upon the seriousness of the misconduct as determined by the deputy according to the circumstances in each case, shall be disqualified for waiting week credit or benefits for not less than four nor more than sixteen weeks for which he claims benefits and is otherwise eligible.

The purpose of the unemployment compensation laws is " 'to provide for the compulsory setting aside of an unemployment reserve to be used for the benefit of persons unemployed through no volition of their own.' " *Bussman Mfg. Co. v. Industrial Commission of Missouri,* 335 S.W.2d

456, 461 (Mo.App.1960) (quoting Mo.Rev. Stat. § 288.020 (1949)).

Judicial interpretations of the unemployment statutes have required that an employee not cause his dismissal by his wrongful action or inaction or his choosing not to be employed. *Missouri Div. of Employment Sec. v. Labor & Industrial Relations Comm'n of Missouri*, 651 S.W.2d 145, 148–49 (Mo. banc 1983).

In the case at bar, the immediate and direct cause of the appellant's unemployment was his decision to operate an automobile after his drivers license had been suspended. Appellant argues that court decisions in Missouri have limited "misconduct connected with work" to instances occurring during the job and at the work place.. However, there are no court decisions in Missouri interpreting "connection with work."

Contrary to appellant's position, *Powell v. Division of Employment Sec.*, 669 S.W.2d 47 (Mo.App.1984), defines misconduct as:

> "[M]isconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of the standards of behavior which the employer has a right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's obligations to the employer."

*Id.* at 50 (citing 76 Am.Jur.2d Unemployment Compensation § 52 (1975)); *see also Ritch v. Industrial Comm'n of Missouri*, 271 S.W.2d 791 (Mo.App.1954); *Storz Instrument Co. v. Labor & Industrial Relations Comm'n*, 723 S.W.2d 72 (Mo.App. 1986).

Appellant argues that the act of operating a motor vehicle after his license had been suspended was nothing more than "poor judgment" and therefore, neither adverse to, nor in disregard of, the employer's interests. We disagree. His employer had a right to expect his attendance at work. This is especially true in view of the employers' warnings relative to his absenteeism. The following cases represent this obligation owed by appellant to his employer.

In *Medina v. Unemployment Compensation Bd. of Review*, 55 Pa.Commw. 323, 423 A.2d 469 (1980), the claimant had been arrested for assault, and subsequently incarcerated. The claimant had also notified his employer. *Id.* 423 A.2d at 470. The court in *Medina* set forth the elements to be used to support a finding of absenteeism as willful misconduct: excessive absences; failure to notify the employer in advance of the absence; lack of good or adequate cause for absence; disobedience of existing company rules, regulations, or policy with regard to absenteeism; and disregard of warnings regarding absenteeism. *Id.* at 471.

The first element was established, just as it has been established in the present case. The third element was also established. As in the present case, the *Medina* court was careful to note that the dismissal was based upon protracted absences, and not for the underlying criminal conduct which caused the incarceration. The court found that the incarceration supported a finding of willful misconduct, the court noted "[c]ertainly an employee who engages in criminal activity punishable by incarceration should realize that his ability to attend work may be jeopardized." *Id.* Just as in this case, appellant's knowing operation of an uninsured vehicle, with no driver's license, should have made appellant aware that he faced the possibility of further penalty if caught, which in turn could impact upon his employment.

In *Collins v. B & G Pie Co.*, 59 N.C.App. 341, 296 S.E.2d 809 (1982), the claimant was incarcerated following the activation of a suspended sentence and missed two months of work as a result. *Id.* at 810. Following his dismissal, the claimant filed for benefits which were denied. The North Carolina court looked at two factors: First, whether the unemployment was through no

fault of the claimant; and secondly, whether the actions of the employee were reasonable and taken with good cause. *Id.* at 811. The court found claimant's incarceration and resulting absence from work to be a willful violation of his employer's work rules.

A similar factual situation is presented in *Smith v. American Indian Chem. Dependency Diversion Project*, 343 N.W.2d 43 (Minn.Ct.App.1984). In *Smith*, an employee had a record of unexcused absences and received warnings that further such incidents would result in discipline. Smith was arrested and incarcerated for a period of three days for failure to pay a speeding ticket. Following his release from jail, Smith was suspended and later discharged as the result of this three day absence from work while he was incarcerated. The court stated that Smith's unavailability for work due to his incarceration was a disregard of the employer's attendance standards which the employer had a right to expect of his employee. *Id.* at 45. The Court further held " '[t]he fact that he (defendant) may not have intended to disqualify himself is not determinative.' " *Id.* (quoting *Grushus v. Minnesota Mining & Mfg.*, 257 Minn. 171, 100 N.W.2d 516 (1960)). Further, the court noted that public policy required unemployment reserves be used for the benefit of persons unemployed through no fault of their own. Smith was found to have been discharged for misconduct and was disqualified from receiving benefits. *Id.* at 45–6.

The Missouri Supreme Court has held that interpretation and construction of a statute by the agency charged with its administration is entitled to great weight. *Foremost–McKesson, Inc. v. Davis*, 488 S.W.2d 193, 197 (Mo. banc 1972). Respondents are charged with the responsibility of administering the Missouri employment security laws within the parameters of the legislature's intent.

A deliberate decision to violate the law which then renders an employee unable to report for work amounts to more than just "poor judgment." Finding misconduct connected with work where an employee has made a conscious decision to violate the law should not be construed as meaning that any and all acts of an employee will become work related. The commission's decision is in accordance with the provisions of the employment security law and is consistent with the public policy to assist only those individuals who become unemployed through "no fault of their own."

The judgment of the commission is affirmed.

All concur.