Sara DAMERON, Claimant/Appellant,

v.

**DRURY INNS, INC.,**
**Employer/Respondent,**

and

**Division of Employment Security,**
**Respondent.**

No. ED 86932.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 25, 2006.

Shawn M. Scharenborg, Jackson, MO, for appellant.

Cynthia A. Quetsch, Jefferson City, MO, Drury Inns Pro Se, St. Louis, MO, for respondents.

LAWRENCE E. MOONEY, Judge.

The claimant, Sara Dameron, appeals from the decision of the Labor Industrial Relations Commission, which held that she was discharged for misconduct connected with work and therefore was disqualified for unemployment-compensation benefits. Because the employer, Drury Inns, Inc., failed to meet its burden of proving that the claimant was discharged for misconduct connected with work, we reverse and remand.

### Factual Background

The claimant began working for the employer as a reservation agent on March 11,

2004. The employer fired the claimant on May 19, 2004, for excessive absenteeism. Following her termination, the claimant filed a claim for unemployment-compensation benefits. A deputy for the Missouri Division of Employment Security determined that the claimant's discharge was not for misconduct connected with work and thus, the claimant was not disqualified for benefits. In its decision, the deputy noted that the claimant was discharged because the employer believed her absences were excessive, and that the employer had been given an opportunity to provide additional information but failed to do so.

The employer appealed the deputy's determination to the Appeals Tribunal, and an Appeals Referee conducted a telephonic hearing. The claimant testified that while working on May 18, 2004, she developed a migraine headache, accompanied by vomiting and an inability to see her computer screen. She notified assistant manager Scott Lincoln that she was ill and needed to leave her shift early. Mr. Lincoln gave the claimant permission to leave, forewarning the claimant that if she did leave, she probably would not have a job the next day. The claimant left work and had her mother drive her to the hospital. The claimant reported for her scheduled shift the next day, with a doctor's excuse in hand, but her supervisor discharged her for excessive absenteeism.

A lone witness, Rhonda Murphy, testified on behalf of the employer at the hearing. Ms. Murphy, a director for Drury Inns, was the claimant's supervisor. Ms. Murphy testified that the claimant's early departure from her shift on May 18th was the act that caused the claimant's separation from work. Ms. Murphy further testified that the claimant had missed work on March 23, April 3, April 5, April 6, April 7, April 9, and April 10. Ms. Murphy also noted that the claimant had signed the employer's attendance policy, which provided for no excused absences, and that she had revisited the policy with the claimant after claimant's absence on April 10th. No further testimony or explanation regarding the claimant's discharge was given by Ms. Murphy. The Appeals Referee specifically noted during the hearing that he had received no documents as evidence from the employer in the matter. The Appeals Tribunal issued its decision, which found that the claimant's discharge was not for misconduct connected with work.

The employer filed an Application for Review to the Commission. In a letter accompanying its application, the employer acknowledged that its witness had testified at the Appeals Tribunal hearing regarding the final incident involving the claimant, but that the employer had not submitted any documentary evidence. The employer stated it was attaching those documents to its letter.[1]

---

1. On appeal, the claimant alleges that the late filing of these documents, which were not "newly-discovered" evidence, violated 8 CSR 20–4.010(5)(A). That rule, entitled "Additional Evidence," states that "after an application for review has been filed with the commission, any interested party may file an application with the commission for permission to submit additional evidence at a hearing before the full commission or its duly authorized representative. The hearing of additional evidence by the commission will not be granted except upon the grounds of newly discovered evidence which could not with reasonable diligence have been produced at the hearing before the appeals tribunal." The complained—of documents appear only to be a copy of the employer's attendance policy, a signed acknowledgment that the claimant had received a copy of the employer's handbook, and a written record of an oral discussion between the claimant and Ms. Murphy held to assure that the claimant understood the employer's attendance policy and showing the dates of the claimant's absences. We need not reach this point of error because the rec-

The Commission, with one member dissenting, reversed the decision of the Appeals Tribunal. The Commission reasoned that an employer had the right to expect its employees to show up for work when scheduled, and had to be able to depend on its employees in order to conduct its business. The Commission concluded that the claimant's several absences within a short time period constituted a pattern and were misconduct under the Missouri employment-security laws. Accordingly, having determined that the claimant was discharged for misconduct connected with work, the Commission found that the claimant was disqualified for six weeks for which she claimed benefits and was otherwise eligible. The claimant now appeals.[2]

### Discussion

■ Under Section 288.050.2 RSMo 2000,[3] a claimant may be denied waiting-week credit of four to sixteen weeks of unemployment benefits if the claimant is fired for "misconduct" connected with his work. *Akers v. Barnes–Jewish Hospital,* 164 S.W.3d 136, 137–38 (Mo.App. E.D. 2005). "Misconduct" is defined under the Missouri employment-security laws as follows:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial

disregard of the employer's interest or of the employee's duties and obligations to the employer.

Section 288.030.1(24). This statutory definition, effective January 1, 2005, sets forth a nearly identical definition of "misconduct" to that announced by the appellate courts of this State. *See Akers,* 164 S.W.3d at 138. As noted in prior decisions, in each of the alternative ways in which an employee can engage in misconduct disqualifying the employee from receiving unemployment compensation, there is the requirement that the employee willfully violate the rules or standards of the employer. *Hoover v. Community Blood Center,* 153 S.W.3d 9, 13 (Mo.App. W.D. 2005). The violations must be intended. *Dolgencorp, Inc. v. Zatorski,* 134 S.W.3d 813, 818 (Mo.App. W.D.2004).

■ A pattern of absenteeism or tardiness may constitute misconduct regardless of whether the last incident alone constitutes misconduct. Section 288.050.3. The fact-finder may consider a pattern of absenteeism to be misconduct in appropriate circumstances, regardless of the nature of the final incident of absence. *Id* However, this statute does not abrogate the well-settled rule that absences due to illness or family emergency, where properly reported to the employer, do not constitute willful misconduct within the meaning of section 288.050.2. *Tutwiler v. Fin–Clair Corp.,* 995 S.W.2d 497, 499 (Mo.App. E.D. 1999). The reason for the rule is obvious—if absences are due to illness or family emergency, a claimant has not *willfully* violated an employer's rule. This is be-

---

ord, even with these documents in it, does not contain sufficient competent evidence to support the Commission's finding of misconduct.

**2.** Drury Inns, Inc. did not favor this Court with a brief on appeal. There is no penalty for a respondent failing to file a brief. A respondent's failure to file a brief, however, requires this court to adjudicate an appellant's claim of error without benefit of whatever argument a respondent might have presented.

**3.** Unless otherwise indicated, all statutory references are to RSMo 2000.

cause the employee's absence is fairly attributable to circumstances beyond her reasonable control—the exigencies of an involuntary medical condition or family emergency—rather than a willful violation of an employer's rule.

It is well to remember that the determination of whether excessive absences are statutory misconduct is a separate consideration from whether such absences violate the absenteeism policy of his employer. *Tutwiler*, 995 S.W.2d at 499. There is a vast distinction between the violation of an employer's work rule, which would justify the discharge of the employee, and a willful, wanton, or deliberate violation of such rule, which would warrant a determination of misconduct disqualifying the claimant for unemployment-compensation benefits. *Hoover*, 153 S.W.3d at 13. "Violation of an employer's absence policy, which may be adequate cause for dismissal, is not, standing alone, necessarily a finding of misconduct connected with work, so as to deny unemployment benefits." *Division of Employment Security v. Gardner–Denver Machinery, Inc.*, 941 S.W.2d 13, 16 (Mo.App. W.D.1997); *see also, Tutwiler*, 995 S.W.2d at 499.

When, as here, the employer contends that a claimant was discharged for "misconduct," it is the employer, not the claimant, that bears the burden of proving by substantial and competent evidence that the claimant was discharged for "misconduct" connected with work. *Akers*, 164 S.W.3d at 138; *Tutwiler*, 995 S.W.2d at 499. Thus, the employer here bore the burden of proving that the claimant willfully violated the rules or standards of the employer. *See Hoover*, 153 S.W.3d at 13. The employer here simply failed to meet that burden. The employer's evidence was that it had a "no-excuse" policy, that the claimant had missed work on a number of days, and that the claimant was discharged the day after leaving her shift early due to a reported illness. The employer presented no evidence as to the circumstances of the claimant's earlier absences. The employer's only evidence as to the claimant's final absence was that the claimant had a legitimate medical complaint, which was properly reported. These are critical evidentiary failings. Although a pattern of absenteeism may constitute misconduct regardless of whether the last incident alone constitutes misconduct, the employer had the burden of adducing evidence concerning the pattern of absenteeism sufficient for the fact-finder to conclude that this pattern was a willful violation.[4]

To conclude, we hold there is insufficient evidence of "misconduct" in the record to support the Commission's decision. This Court may reverse the Commission's decision if there was not sufficient competent evidence to support the decision. Section 288.210 RSMo.2000; *Akers*, 164 S.W.3d at 137. Accordingly, we reverse the decision of the Commission, and remand the cause with directions to reinstate the claimant's six weeks of benefits.

KATHIANNE KNAUP CRANE, P.J., and BOOKER T. SHAW, J., concur.

---

4. In her brief, the claimant asserts the earlier absences were for illness and properly reported. Such absences do not constitute misconduct. *Tutwiler*, 995 S.W.2d at 499.