Eileen Davis YOUNG, Appellant,

v.

The **WASHINGTON UNIVERSITY** and Division of Employment Security, Respondents.

No. ED 96469.

Missouri Court of Appeals, Eastern District, Division Four.

Jan. 17, 2012.

Martin L. Perron, St. Louis, MO, for appellant.

Rodney A. Harrison, St. Louis, MO, Michael E.C. Pritchett, Jefferson City, MO, for respondents.

PATRICIA L. COHEN, Presiding Judge.

### Introduction

Eileen Davis Young (Claimant) appeals the decision of the Labor and Industrial Relations Commission denying her unemployment benefits based upon its finding that Washington University School of Medicine (Employer) terminated Claimant for misconduct connected with her work. We reverse.

### Factual and Procedural Background

Claimant began her employment as a custodial worker for Employer in March 2007. Employer's attendance and absence notice policy required employees to contact their supervisors, through Employer's message manager, prior to the start of each missed shift.

When Claimant returned from a two-month medical leave of absence on July 2, 2010, she submitted to her supervisor, Constance Ross, a letter requesting a one-week personal leave of absence from July 12 through July 21, 2010 to go on a cruise with her family. In her letter, Claimant explained that she had scheduled and paid for the cruise prior to her medical leave of absence and the vacation package was non-refundable.

Charles Johnson, Employer's operations manager, informed Claimant that employees must request personal leave at least thirty days in advance, but stated: "We are willing to grant this request if you can provide documentation showing that the trip was prepaid prior to your illness." On July 6, 2010, Claimant presented to Mr. Johnson a money order stub dated March 27, 2010 in the amount of $100. Employer deemed the money order stub inadequate because it did not show Claimant's name or the purpose of the payment. On July 8, 2010, Claimant provided Employer a copy of her cruise itinerary.

On July 9, 2010, Maria Lenoir, Employer's manager of custodial services, called a meeting with Claimant, Ms. Ross, and Mr. Johnson. Ms. Lenoir informed Claimant that the money order and cruise itinerary she submitted were unacceptable, but advised Claimant that Employer would authorize her leave of absence, provided Claimant present adequate documentation upon her return.[1] In a letter dated July 17, 2010, Ms. Lenoir explained: "We need[ ] documentation on cruise line letterhead, from a travel agent, booking agent or payment receipt showing that payment was made to them prior to April 24, 2010 for this cruise trip." Ms. Lenoir warned Claimant: "[I]f you fail to provide the appropriate documentation .... prior to the start of your shift on Thursday, July 22, 2010, you will not be allowed to work and you will be discharged for failure to provide proper documentation regarding your absence."

Claimant returned to work on July 22, 2010 and provided Employer a payment history for the cruise, showing the first payment for group "Davis Family Reunion" was made in February 2010. Mr. Johnson told Claimant that the documen-

tation was inadequate because it did not list Claimant's name as a passenger on the cruise. Mr. Johnson sent Claimant home to obtain proper documentation.

On July 23, 2010, Claimant left messages on Employer's message manager and Ms. Lenoir's cell phone indicating that she would not be at work because she did not yet have the required documentation. Claimant also left messages for Ms. Lenoir on July 26 and 27, saying she was trying to get in touch with her travel agent. On July 30, 2010, Claimant faxed Ms. Lenoir a copy of a typed letter from her travel agent, printed on the travel agent's letterhead, which stated: "I am sending you a recap of your payments from the cruise. Your initial deposit was July 11, 2009. You made additional payments on February 2, 2010, February 4, 2010 and a final payment on April 16, 2010." The letter closed, "Sincerely, Ruth Lewis," but was not signed by hand. Upon receiving the faxed letter, Ms. Lenoir called Claimant and told her that the letter was unacceptable because "there is no date as [sic] when the letter was typed and there is no signature of the person who typed it." Ms. Lenoir asked Claimant to provide a signed and dated copy of the letter.

On August 1, 2010, Claimant left Ms. Lenoir a message explaining that she had received an email from the travel agent indicating that she would be out of town until August 6 and would mail her the signed copy of the letter when she returned. Claimant did not call Employer again until August 11, 2010, when she informed Ms. Lenoir that she was still waiting for the signed letter from her travel agent. At this time, Ms. Lenoir advised Claimant that she was terminating Claimant's employment because Claimant had

---

1. During this meeting, Ms. Lenoir also told Claimant that she need only call into the message manager one time to report her one-week absence.

violated Employer's no call, no show policy.

Claimant applied for unemployment benefits, and a deputy for the Division of Employment Security (Division) determined that Claimant was disqualified from receiving benefits because she was discharged for misconduct connected with work. Claimant appealed the deputy's decision to the Division's Appeals Tribunal. On November 23 and December 16, 2010, an administrative law judge (ALJ) conducted a hearing via telephone conference at which Ms. Lenoir and Claimant testified.

On January 3, 2011, the ALJ affirmed the denial of benefits on the grounds that Employer discharged Claimant for misconduct. Specifically, the ALJ found that Claimant's failure to report for work or notify Employer that she would be absent on August 9, 10, and 11, 2010 and her failure to provide the requested documentation prior to her absence "constituted acts of wanton or willful disregard of the employer's interest and deliberate violations of the employer's rules."

Claimant filed an application for review with the Commission, and the Commission affirmed and adopted the Appeals Tribunal's decision. Claimant appeals.[2]

### Standard of Review

■ On appeal from a decision in an unemployment benefits proceeding, this court may modify, reverse, remand for rehearing, or set aside the award upon finding that: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts

found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. Mo.Rev. Stat. § 288.210 RSMo 2000. While we defer to the Commission's factual findings and credibility determinations, we are not bound by the Commission's conclusions of law or application of law to the facts. Mo. Rev.Stat. § 288.210; *Korkutovic v. Gamel Co.*, 284 S.W.3d 653, 656 (Mo.App. E.D. 2009). The determination of whether an employee is discharged for misconduct connected with work is a question of law that we review *de novo. Williams v. Enter. Rent–A–Car Shared Servs., LLC,* 297 S.W.3d 139, 142 (Mo.App.E.D.2009).

### Discussion

■ In her sole point on appeal, Claimant alleges that the Commission erred in finding that she engaged in misconduct connected with her work because its finding was not supported by sufficient competent evidence in the record. Specifically, Claimant asserts that "there is no evidence that Claimant failed to call the Employer when she was aware she was required to do so and no evidence of any willful or deliberate failure to provide documents to support her leave of absence...." We agree.

■ Section 288.050.2 of the Missouri Employment Security Law disqualifies a claimant from receiving unemployment compensation benefits if he or she "has been discharged for misconduct connected with the claimant's work." Mo. Rev.Stat. § 288.050.2. The statute defines "misconduct" as:

---

**2.** Neither Employer nor the Division of Employment Security elected to file a responsive brief in this case. "There is no penalty for a respondent failing to file a brief. That omission, however, requires this court to adjudicate the appellant's claims of error without

benefit of whatever argument respondent might have made in response." *Peck v. La Macchia Enters.*, 202 S.W.3d 77, 79 n. 1 (Mo. App. W.D.2006) (quotation omitted); *see also Dameron v. Drury Inns, Inc.*, 190 S.W.3d 508, 511 n. 2 (Mo.App. E.D.2006).

an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

Mo.Rev.Stat. § 288.030.1(23). Generally, the claimant bears the burden of proving eligibility for unemployment compensation benefits. *Tenge v. Washington Group Int'l, Inc.,* 333 S.W.3d 492, 497 (Mo.App. E.D. 2011). However, when the employer alleges that the claimant was discharged for misconduct connected with work, the burden shifts to the employer to prove, by a preponderance of the evidence, that the claimant willfully violated the employer's rules or standards. *Id.; Venz v. Convergys Customer Mgmt. Group, Inc.,* 326 S.W.3d 554, 557 (Mo.App. E.D.2010). "Without evidence that an employee deliberately or purposefully violated a workplace rule, the employee cannot properly be found to have committed an act of misconduct." *Tenge,* 333 S.W.3d at 497.

■ A violation of an employer's absence reporting policy, which may be adequate cause for dismissal, does not necessarily constitute misconduct connected with work so as to render a claimant ineligible for unemployment benefits. *Dameron v. Drury Inns, Inc.,* 190 S.W.3d 508, 512 (Mo.App. E.D.2006); *see also Johnson v. Div. of Employment Sec.,* 318 S.W.3d 797, 807 (Mo.App. W.D.2010). "Absent evidence that Claimant willfully or intentionally violated the Employer's reporting rules, Claimant cannot properly be found to have committed an act of statutory misconduct." *Gaddy v. AmeriGas Propane,* Inc., 334 S.W.3d 907, 911 (Mo.App. E.D. 2011).

Based on our review of the record, we conclude that the Commission's findings that Claimant willfully and intentionally violated Employer's absence policy and failed to provide proper documentation relating to her personal leave of absence is not supported by competent and substantial evidence. *See, e.g., Gaddy,* 334 S.W.3d at 911. Employer presented evidence that it conditioned authorization of Claimant's personal leave upon the submission of documentation showing that Claimant paid for her cruise vacation prior to April 24, 2010. Ms. Lenoir testified that, between the dates of July 6 and July 30, Claimant repeatedly submitted to Employer various documents relating to the cruise, but none were deemed adequate by Employer. When Claimant returned to work on July 22, 2010, Employer sent her home with instructions not to return to work until she obtained the proper documentation. Ms. Lenoir stated that Claimant called her on July 23, 26, 27, and 30 and August 1, 2010 with updates regarding her efforts to obtain the required documentation.

Likewise, Claimant testified that, when she returned to work on July 22, she presented Ms. Ross and Mr. Johnson a copy of the payment history for the cruise, and Mr. Johnson "indicated that these documents still were unacceptable, and that [she] was being sent home until [she] could provide the correct documentation." Claimant stated that she was not aware of a policy requiring employees who would be absent for an extended period to call in each day of that absence. The Commission accepted as true Claimant's testimony that she did not know she was required to call in her absences between August 1 and 11, 2010, specifically finding that: "The claimant was not aware that she was required to call in each day of an absence

and was not aware of the employer's policy regarding being absent for three or more days without notice being considered job abandonment." The Commission also found that Claimant "tried to obtain the requested documents and was in periodic contact with the employer."

The Commission's factual findings do not support the conclusion that Claimant knew of but disregarded her obligation to report her absences on August 9, 10, and 11, 2010. *See, e.g., Gaddy,* 334 S.W.3d at 911. Nor do the Commission's findings of fact support its determination that Claimant willfully failed to provide Employer the requested documentation relating to her cruise vacation. Given that a claimant must be aware of and knowingly or consciously violate an employer's rule to willfully disregard the employer's interest, *Williams,* 297 S.W.3d at 142, the Commission's findings are insufficient, as a matter of law, to support the Commission's determination that Claimant's actions "constituted acts of wanton or willful disregard of the employer's interest and deliberate violations of the employer's rules." *See, e.g., Cubit v. Accent Mktg. Servs., LLC,* 222 S.W.3d 277, 281 (Mo.App. W.D.2007). Point granted.

### Conclusion

The Commission's decision is reversed.

LAWRENCE E. MOONEY and ROBERT M. CLAYTON III, JJ., concur.